1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GARY W. SCHONS
   Senior Assistant Attorney General
4  NIKI SHAFFER
   Deputy Attorney General
5  ROBIN DERMAN, State Bar No. 228485
   Deputy Attorney General
6   110 West A Street, Suite 1100
    San Diego, CA 92101
7   P.O. Box 85266
    San Diego, CA 92186-5266
8   Telephone: (619) 645-2230
    Fax: (619) 645-2271
9   Email: Robin.Derman@doj.ca.gov

10 Attorneys for Respondent

11              IN THE UNITED STATES DISTRICT COURT

12           FOR THE SOUTHERN DISTRICT OF CALIFORNIA

13

14 ISMAEL S. HERNANDEZ,                    08CV0010 WQH (POR)

15                         Petitioner,     **MEMORANDUM OF POINTS
                                           AND AUTHORITIES IN
16         v.                              SUPPORT OF ANSWER TO
                                           FIRST AMENDED PETITION
17 A. HEDGEPETH, WARDEN,                   FOR WRIT OF HABEAS
                                           CORPUS**
18                         Respondent.

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

PROCEDURAL BACKGROUND .................................... 1

STANDARD OF REVIEW .......................................... 2

STATEMENT OF FACTS .......................................... 4

ARGUMENT .......................................................... 6

I.    THE STATE COURT REASONABLY CONCLUDED THAT THE TRIAL COURT PROPERLY DECLINED TO DISMISS A JUROR IN A DECISION THAT WAS NEITHER CONTRARY TO, NOR AN UNREASONABLE APPLICATION OF, CONTROLLING SUPREME COURT PRECEDENT OR THE FACTS PRESENTED .................................................. 6

    A.   Procedural Background .................................... 7

    B.   Applicable Law .......................................... 7

    C.   Petitioner's Claim Fails To State A Federal Question; The State Appellate Court Correctly Determined That The Trial Court Adequately Investigated Petitioner's Claim Of Juror Misconduct And Its Finding Of No Good Cause To Dismiss The Juror Was Supported By The Record .................................... 8

II.    PETITIONER'S CLAIM THAT THE TRIAL COURT ERRED BY NOT INSTRUCTING THE JURY TO VIEW HIS EXTRAJUDICIAL ADMISSIONS WITH CAUTION MUST BE DISMISSED FOR FAILING TO PRESENT A FEDERAL QUESTION; THE STATE COURT REASONABLY REJECTED THIS CLAIM ON THE MERITS, FINDING THE ERROR HARMLESS .................................................. 10

    A.   Procedural Background .................................... 10

    B.   Applicable Law .......................................... 11

    C.   Petitioner's Claim Fails To Present A Federal Question; Petitioner Cannot Demonstrate A Due Process Violation Because The Failure To Instruct Did Not So Infect His Trial As To Render It Unfair; The State Appellate Court Reasonably Rejected This Claim .................................... 12

    D.   The Failure To Give CALJIC No. 2.71 Did Not Have A Substantial And Injurious Effect On The Outcome Of Petitioner's Trial .................................... 13

III.    PETITIONER'S CLAIM THAT THE TRIAL COURT ERRED BY PROVIDING THE JURY WITH AN INSTRUCTION ON WEIGHING WITNESS CREDIBILITY THAT LOWERED THE PROSECUTION'S BURDEN OF PROOF MUST BE DISMISSED

08CV0010 WQH (POR)

**TABLE OF CONTENTS (continued)**

Page

FOR FAILING TO PRESENT A FEDERAL QUESTION; THE STATE
COURT REASONABLY REJECTED THIS CLAIM ON THE MERITS          14

    A.    Applicable Law          14

    B.    Petitioner's Claim Fails To Present A Federal Question; Petitioner Cannot
Demonstrate A Due Process Violation Because The Instruction Did Not So
Infect His Trial As To Render It Unfair; The State Appellate Court
Reasonably Rejected This Claim          15

    C.    The Giving Of CALJIC No. 2.21.2 Did Not Have A Substantial And
Injurious Effect On The Outcome Of Petitioner's Trial          16

CONCLUSION          17

08CV0010 WQH (POR)

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Adams v. Texas*
448 U.S. 38
100 S. Ct. 2521
65 L. Ed. 2d 581 (1980)                                                    8

*Boyd v. California*
494 U.S. 370
110 S. Ct. 1190
108 L. Ed. 2d 316 (1990)                                                   14

*Brecht v. Abrahamson*
507 U.S. 619
113 S. Ct. 1710
123 L. Ed. 2d 353 (1993)                                               13, 16

*Cupp v. Naughton*
414 U.S. 141
94 S. Ct. 396
38 L. Ed. 2d 385 (1991)                                                   11

*Engle v. Isaac*
456 U.S. 107
102 S. Ct. 1558
71 L. Ed. 2d 783 (1982)                                                    8

*Estelle v. McGuire*
502 U.S. 62
112 S. Ct. 475
116 L. Ed. 2d 385 (1991)                                        9, 11, 12, 14, 15

*Fry v. Pliler*
127 S. Ct. 2321
168 L. Ed. 2d 16 (2007)                                                   13

*Henderson v. Kibbe*
431 U.S. 145
97 S. Ct. 1730
52 L. Ed. 2d (1991)                                                       11

*Irvin v. Dowd*
366 U.S. 717
81 S. Ct. 1639
6 L. Ed. 2d 751 (1961)                                                     8

*Lambert v. Blodgett*
393 F.3d 943 (9th Cir. 2004)                                               3

08CV0010 WQH (POR)

**TABLE OF AUTHORITIES  (continued)**

**Page**

1

2
*Lara v. Ryan*
3  455 F.3d 1080 (9th Cir. 2006)                                          4

4  *Lindh v. Murphy*
   521 U.S. 320
5  117 S. Ct. 2059
   138 L. Ed. 2d 481 (1997)                                              2

6  *Lockyer v. Andrade*
   538 U.S. 63
7  123 S. Ct. 1166
   155 L. Ed. 2d 144 (2003)                                              3
8

9  *Patton v. Yount*
   467 U.S. 1025
10 104 S. Ct. 2885
   81 L. Ed. 2d 847 (1984)                                               8

11 *People v. Beardslee*
   53 Cal. 3d 68
12 806 P. 1311
   279 Cal. Rptr. 276 (1991)                                          15, 16
13

14 *People v. Ray*
   13 Cal. 4th 313
15 52 Cal. Rptr. 2d 296 (1996)                                           8

16 *People v. Smith*
   35 Cal. 4th 334
17 107 P.3d 229
   25 Cal. Rptr. 3d 554 (2005)                                           8

18 *Pulley v. Harris*
   465 U.S. 37
19 104 S. Ct. 871
   79 L. Ed. 2d 29 (1984)                                                9
20

21 *Smith v. Phillips*
   455 U.S. 209
22 102 S. Ct. 940
   71 L. Ed. 2d 78 (1982)                                                7
23

24 *Sullivan v. Louisiana*
   508 U.S. 275
   113 S. Ct. 2078
25 124 L. Ed. 2d 182 (1993)                                             14

26 *Wainwright v. Witt*
   469 U.S. 412
27 105 S. Ct. 844
   83 L. Ed. 2d 841 (1985)                                               8
28

08CV0010 WQH (POR)

# TABLE OF AUTHORITIES  (continued)

Page

*Weaver v. Thompson*
197 F.3d 359 (9th Cir. 1999)                                            2

*Williams v. Taylor*
529 U.S. 362
120 S. Ct. 1495
146 L. Ed. 2d 389 (2000)                                              2, 3

*Ylst v. Nunnemaker*
501 U.S. 797
111 S. Ct. 2590
115 L. Ed. 2d 706 (1991)                                                3

**Constitutional Provisions**

United States Constitution
    Sixth Amendment                                              7, 9
    Fourteenth Amendment                                         8, 11

**Statutes**

28 U.S.C.
    § 2241(c)(3)                                                    8
    § 2254(a)                                                       8
    § 2254(d)                                            2, 10, 13, 14, 16
    § 2254(d)(1)                                                    3
    § 2254(d)(2)                                                    3
    § 2254(e)(1)                                                 3, 4, 8

Cal. Penal Code
    § 187(a)                                                     1, 5
    § 1089                                                          8
    § 12022.5(a)                                                    1
    § 12022.53(d)                                                1, 5

Cal. Welfare & Institutions Code
    § 707(d)(1)                                                  2, 5

**Other Authorities**

Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA)          2-4

CALJIC
    No. 1.01                                                    15, 16
    No. 2.13                                                       12
    No. 2.20                                                       12
    No. 2.22                                                       12
    No. 2.27                                                       12
    No. 2.71                                                    11-13

## TABLE OF AUTHORITIES  (continued)

| | Page |
|---|---|
| No. 2.90 | 15, 16 |
| No. 2.21.1 | 12 |
| No. 2.21.2 | 14-16 |

08CV0010 WQH (POR)

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GARY W. SCHONS
   Senior Assistant Attorney General
4  NIKI SHAFFER
   Deputy Attorney General
5  ROBIN DERMAN, State Bar No. 228485
   Deputy Attorney General
6   110 West A Street, Suite 1100
    San Diego, CA 92101
7   P.O. Box 85266
    San Diego, CA 92186-5266
8   Telephone: (619) 645-2230
    Fax: (619) 645-2271
9   Email: Robin.Derman@doj.ca.gov

10  Attorneys for Respondent

11           IN THE UNITED STATES DISTRICT COURT

12         FOR THE SOUTHERN DISTRICT OF CALIFORNIA

13

14  ISMAEL S. HERNANDEZ,                    08CV0010 WQH (POR)

15                          Petitioner,     **MEMORANDUM OF POINTS
                                            AND AUTHORITIES IN**
16       v.                                 **SUPPORT OF FIRST
                                            AMENDED PETITION FOR**
17  A. HEDGEPETH, WARDEN,                   **WRIT OF HABEAS CORPUS**

18                          Respondent.

19

20

21            **PROCEDURAL BACKGROUND**

22        On July 12, 2005, a jury found Petitioner guilty of second degree murder (Cal. Penal Code

23  § 187(a)).  The jury further found he personally used and discharged a firearm in the killing (Cal.

24  Penal Code §§ 12022.5(a), 12022.53(d)), and that he was at least 16 years old when he committed

25  ///

26  ///

27  ///

28  ///

1    the crime (Cal. Welf. & Inst. Code § 707(d)(1)).    (7 RT 705[1/].)  On August 29, 2005, the court

2    sentenced Petitioner to serve 40 years to life in state prison.  (8 RT 716-717; CT 254.)

3    On April 5, 2006, Petitioner appealed the judgment on the same grounds he raises in the

4    instant Petition.  (Lodgment 3.)  On November 14, 2006, the California Court of Appeal, Fourth

5    Appellate District, Division One issued an unpublished opinion in which the court affirmed the

6    judgment.  (Lodgment 6.)

7    On December 28, 2006, Petitioner filed a petition for review in the California Supreme

8    Court (Lodgment 7), and the court denied the petition on February 7, 2007 (Lodgment 8).

9    **STANDARD OF REVIEW**

10    Petitioner filed the Petition after the effective date of, and thus is subject to, the

11    Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  See *Lindh v. Murphy*, 521 U.S.

12    320, 326, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997); *Weaver v. Thompson*, 197 F.3d 359, 362 (9th

13    Cir. 1999).  In cases subject to the AEDPA, a petitioner may not receive relief with respect to any

14    claim that was adjudicated on the merits in state court proceedings unless the adjudication of the

15    claim was either "contrary to, or involved an unreasonable application of, clearly established Federal

16    law, as determined by the Supreme Court of the United States" or was based on "an unreasonable

17    determination" of the state court evidence.  28 U.S.C. § 2254(d).

18    The "contrary to" and "unreasonable application" clauses contained in 28 U.S.C. § 2254(d)

19    have distinct meanings.  *Williams v. Taylor*, 529 U.S. 362, 404, 120 S. Ct. 1495, 146 L. Ed. 2d 389

20    (2000).  A decision is "contrary to" United States Supreme Court authority if it fails to apply the

21    correct controlling authority, or if it applies the controlling authority to a case involving facts

22    materially indistinguishable from those in a controlling case, but reaches a different result.  *Williams*

23    *v. Taylor,* 529 U.S. at 413-414.  A decision is an "unreasonable application" of clearly established

24    federal law if the state court identifies the correct governing legal principle but unreasonably applies

25    that principle to the facts of that case.  *Id.* at 413.  The "unreasonable application" clause requires

26    _____

27    1. Respondent has referred to the Clerk's Transcript as CT and the Reporter's Transcript as
     RT throughout this Answer.  These documents have been lodged with this Court respectively as

28    Lodgments 1 and 2.

1    the state court decision to be more than incorrect or erroneous; in order for a federal court to grant

2    a habeas writ, the state court decision must be objectively unreasonable. *Lockyer v. Andrade*, 538

3    U.S. 63, 75, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003) (*citing Williams v. Taylor*, 529 U.S. at

4    409-410, 412).

5          When a state court does not find a constitutional violation, a federal court may still grant

6    relief if the state court's decision "was based on an unreasonable determination of the facts in light

7    of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).   Under the

8    AEDPA, a state court's factual findings are entitled to a presumption of correctness.  Therefore, a

9    petitioner must prove the state court's factual findings erroneous by clear and convincing evidence.

10   28 U.S.C. § 2254(e)(1); *see also Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004).  Mixed

11   questions of fact and law are reviewed under the "contrary to" and "unreasonable application" clauses

12   in 28 U.S.C. § 2254(d)(1). *Lambert v. Blodgett*, 393 F.3d 943, 976 (9th Cir. 2004).  A state court's

13   factual findings underlying its conclusion on mixed issues are accorded a presumption of correctness.

14   *Id.*

15         Ordinarily, when a state's highest court fails to issue a reasoned decision addressing a

16   petitioner's claim, the federal habeas court may look to the last reasoned state-court decision to

17   determine whether the state court's determination of the merits of a claim was contrary to, or

18   involved an objectively unreasonable application of, clearly-established federal law as set forth by

19   the United States Supreme Court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S. Ct. 2590, 115

20   L. Ed. 2d 706 (1991).

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

**STATEMENT OF FACTS**[2]

During the afternoon of August 3, 2004, Petitioner and his friend Chris Wash were standing near the Massachusetts Avenue trolley station in Lemon Grove. Petitioner was 17 years old and a member of the "MK" tagging (or graffiti) crew or group.[3] "MK's" territory was Lemon Grove, including the Massachusetts Avenue trolley station area. A blue car drove by the trolley station, followed by a silver car. The blue car was driven by Saleena Maria Sanchez Bingham (Sanchez) and her passengers were Jesus Castillo and Rene Lugo. They were driving to El Prado Avenue to pick up Jorge Martinez. Castillo, Lugo, and Martinez were members of the "DTK" tagging crew or group.[4] 2 The silver car stopped next to Petitioner and Wash and some of its occupants starting "talking shit" (as Wash later testified at trial). One of its occupants displayed a gang hand sign and then Petitioner displayed his gang hand sign. The silver car then continued driving up the street.

Petitioner and Wash walked to a nearby liquor store and then toward Westview Street to visit friends. After leaving the liquor store, they saw the silver car again as it stopped near the corner of Massachusetts Avenue and El Prado Avenue. Three men jumped out of the car, announced they represented DTK, and took off their shirts, apparently signaling they wanted to fight.[5] Petitioner announced he represented MK. Believing the three men were going to "jump" Petitioner, Wash

---

2. The facts of the crime have been taken verbatim from the Court of Appeal's unpublished opinion, except that "the defendant" has been replaced with "Petitioner." Under the AEDPA, a state court's factual determinations are presumed to be correct unless the petitioner has rebutted the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Lara v. Ryan*, 455 F.3d 1080, 1082 (9th Cir. 2006) (adopting California Court of Appeal's unchallenged summary of facts).

3. "MK" apparently is an acronym for either Murder Krew or Murder Klick. Wash was not a member of the "MK" tagging crew.

4. "DTK" apparently is an acronym for Down To Kill. Sanchez was not a member of the "DTK" tagging crew.

5. Wash testified at trial that because he did not see any weapons on the three men who jumped out of the silver car, he believed there was going to be a fist fight.

placed his beer on the ground in case Petitioner needed help. The three men began walking toward Petitioner. When they were about five feet away, he (Petitioner) fired three shots. Although Wash was only three feet from Petitioner, he did not see him (Petitioner) or anyone else with a gun (or other weapon) during the incident. Martinez, one of the three men, grabbed his chest, ran, and dove over the fence of a nearby house. The other two men ran up El Prado. Wash ran home.

Sanchez stopped her blue car at the corner of Massachusetts and El Prado and saw Petitioner with a gun in his hand. She later testified Petitioner was "bouncing around," waving a gun around, and saying, "Those fools came at me foul. I handled them." Petitioner then ran down the street. Sanchez, Lugo, and Castillo found Martinez lying on the ground between two houses. They picked Martinez up, put him in the blue car, and began driving him to his home. Martinez died shortly thereafter. It was later determined Martinez died when a bullet entered the left side of his chest, passed through his left lung and heart, and lodged in his right lung.

An information charged Petitioner with murder (Pen. Code, § 187(a))[6] and alleged he personally discharged a firearm, causing death ( § 12022.53, subd. (d)) and was over 16 years of age when he committed the murder (Welf. & Inst. Code, § 707, subd. (d)(1)). At trial, Wash, Sanchez, and other percipient witnesses testified for the prosecution regarding the incident, substantially as described ante.

Petitioner testified in his own defense. He testified that although he had been an "MK" member since 1999 or 2000, he was not an active member on the date of the incident. However, he admitted that while awaiting trial on the instant charge, he got an "MK" tattoo on his arm. He testified that a couple of days before the incident, two carloads of "DTK" members attacked him with a baseball bat at the Massachusetts Avenue trolley station, injuring his eye and chin. Three weeks earlier, he had been attacked by another gang in Chula Vista. During the instant incident, Petitioner believed the words and actions of one of the "DTK" members in the silver car (apparently Luis Jasso, or "Shorty") meant the men in the car were going to finish what they had started the other day with the baseball bat. However, Petitioner did not think they had participated in that earlier attack.

---

6. All statutory references are to the [California] Penal Code unless otherwise specified.

1    Although Petitioner expected to fight only "Shorty," when the blue car arrived Petitioner thought the

2    two carloads of people (apparently six people) were going to attack him and he feared for his life.[7/]

3    Petitioner then saw a metal object in one of the attacker's hands.[8/]  Petitioner testified that, without

4    thinking, he grabbed his .22-caliber gun with his right hand (although he is left-handed) and shot it

5    wildly three times while he was running and without looking.[9/]  He testified he did not intend to

6    shoot anyone, but only wanted to scare them and escape the attack.  He used the gun because he

7    believed he had to protect his life.  He denied that after the shooting he said, "I shot that fool."  He

8    also denied telling Wash two days later that his attackers should have known better than to deal with

9    real gangsters.  Jose Carranza's statements to police were also presented in Petitioner's defense.

10   Carranza was in his front yard on El Prado when he heard gunshots and saw three people run up the

11   street.  Carranza ran into his house and, looking through a crack in his plastic-covered window, saw

12   a blue car stop and pick up Martinez.  From a distance of about 80 feet away, Carranza thought he

13   saw the black barrel of a gun in the right hand of one of the persons carrying Martinez.

**ARGUMENT**

**I.**

**THE STATE COURT REASONABLY CONCLUDED THAT THE TRIAL COURT PROPERLY DECLINED TO DISMISS A JUROR IN A DECISION THAT WAS NEITHER CONTRARY TO, NOR AN UNREASONABLE APPLICATION OF, CONTROLLING SUPREME COURT PRECEDENT OR THE FACTS PRESENTED**

Petitioner contends that the trial court erred by declining to dismiss a juror without

conducting an adequate inquiry as to whether there was good cause for dismissal.  (Petition at 6.)

---

7.   However, during a subsequent police interview (recorded and played for the jury), Petitioner stated the blue car was friendly and he was not concerned about its occupants.

8.   However, Petitioner did not know in whose hand that metal object was or what the object was.  On cross-examination, he admitted he had seen the metal object earlier when the people were about nine feet from the silver car.  Furthermore, during the recorded police interview, Petitioner stated he never saw a weapon on anyone.

9.   During his recorded police interview, Petitioner initially stated he was not present at the shooting and knew nothing about it.  Subsequently, he admitted he was present, but denied he had a gun or shot anyone.

To the extent that Petitioner is claiming the trial court abused its discretion under state law, his claim must be dismissed for failing to present a federal question. Even if construed as a federal question, the state appellate court reasonably rejected this claim in a decision that was neither contrary to, nor an unreasonable application of United States Supreme Court precedent or the evidence presented.

**A. Procedural Background**

During Petitioner's trial, the trial court had discussions with Juror No. 11 regarding his work and class schedule. The trial court indicated it wanted verification of the juror's schedule. (2 RT 173, 3 RT 273-274.)

Once the juror's schedule became an issue, defense counsel stated that he would agree to release him. The trial court then noted that the juror was not taking any notes. The trial court invited both counsel to stipulate to the juror's release, but the prosecution declined. (2 RT 173.)

The trial court verified the juror's schedule and spoke with counsel about how to accommodate it. Defense counsel told the court that he believed the juror was "sending out signals" such that if he remained on the jury, he might not be willing to deliberate and would rush to a verdict. Defense counsel asked the court to remove the juror for good cause. (4 RT 300.)

The prosecutor stated he had not observed the same concerns and since the court was willing to accommodate the juror's schedule, there was no reason to remove him. (4 RT 300-301.) The court agreed, stating that it originally was worried about the juror's attentiveness and willingness to participate properly in deliberations, but that worry arose solely from the juror's concerns about being able to attend work and the class. Since the court was able to accommodate the juror's schedule, however, the court no longer had concerns about the juror's ability to uphold his duty to deliberate and found no good cause to discharge him. (4 RT 301.)

**B. Applicable Law**

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. Const. amend. VI; *see Smith v. Phillips*, 455 U.S. 209, 217, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982) ("Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they

08CV0010 WQH (POR)

1   happen"). The right to an impartial jury is applicable to the states under the Fourteenth Amendment.

2   *Irvin v. Dowd*, 366 U.S. 717, 721-22, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961).

3       The state court may exclude a juror whose "views would prevent or substantially impair

4   the performance of his duties as a juror in accordance with his instructions and his oath." *Adams v.*

5   *Texas*, 448 U.S. 38, 45, 100 S. Ct. 2521, 65 L. Ed. 2d 581 (1980). Likewise, under California Penal

6   Code section 1089, a juror may be removed from service either before or after final submission of

7   the case if the juror becomes ill, dies, or upon other "good cause." The trial court enjoys broad

8   discretion in determining "good cause." *People v. Smith*, 35 Cal. 4th 334, 348- 49, 107 P.3d 229,

9   25 Cal. Rptr. 3d 554 (2005); *accord People v. Ray*, 13 Cal. 4th 313, 343, 52 Cal. Rptr. 2d 296 (1996)

10   (the decision to retain or discharge a juror rests within the sound discretion of the trial court).

11       A trial court's determination of a juror's credibility is entitled to "special deference."

12   *Patton v. Yount*, 467 U.S. 1025, 1038, 104 S. Ct. 2885, 81 L. Ed. 2d 847 (1984); *Wainwright v. Witt*,

13   469 U.S. 412, 426, 105 S. Ct. 844, 83 L. Ed. 2d 841 (1985) (noting that in determining whether a

14   juror is biased, deference must be paid to the trial judge who sees and hears the juror). Thus, the trial

15   court's finding that a juror was impartial is entitled to a presumption of correctness, rebuttable only

16   upon a showing of clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Patton*, 467 U.S. at

17   1036 (noting that juror impartiality is a question of historical fact). Further, the question for this

18   Court is simply whether the state trial court's decision was fairly supported by the record, not

19   whether it was right or wrong in its determination of impartiality. *Wainwright*, 469 U.S. at 424.

20   **C. Petitioner's Claim Fails To State A Federal Question; The State Appellate Court**
      **Correctly Determined That The Trial Court Adequately Investigated Petitioner's**

21   **Claim Of Juror Misconduct And Its Finding Of No Good Cause To Dismiss The**
      **Juror Was Supported By The Record**

22

23       To the extent Petitioner is claiming that the trial court abused its discretion under state law

24   (Cal. Penal Code § 1089) by refusing to excuse Juror No. 11, this claim is not cognizable in a federal

25   habeas corpus proceeding. A state prisoner can obtain federal habeas relief only if he is held in

26   violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C.

27   § 2241(c)(3); *Engle v. Isaac*, 456 U.S. 107, 119, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982). "[I]t is

28   not the province of a federal habeas court to reexamine state-court determinations on state-law

08CV0010 WQH (POR)

1   questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991); *see*

2   *Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 79 L. Ed. 2d 29 (1984) (a federal court may not

3   issue a writ of habeas corpus on the basis of a perceived error of state law).

4           Even if Petitioner's claim could be liberally construed as an assertion that the trial court

5   violated his Sixth Amendment right to an impartial jury by refusing to excuse the juror for cause,

6   the state court's rejection of this claim was not contrary to, or an unreasonable application of, clearly

7   established Supreme Court precedent.

8           The state appellate court rejected Petitioner's claim, finding that because the record

9   contained no affirmative evidence Juror No. 11 would rush deliberations to maintain his personal

10  schedule, the allegation that he was "sending out signals" to that effect was mere speculation and

11  insufficient to establish the good cause required for dismissal.    The appellate court further

12  determined that the trial court's direct observation of the juror provided it with a sufficient basis to

13  conclude that the juror's demeanor did not constitute good cause for discharge.  Finally, the state

14  appellate court held that the trial court's investigation into the matter provided adequate support for

15  its ruling, and a more detailed or formal inquiry was not required.  (Lodgment 6 at 9-12.)

16          As the California Court of Appeal recognized, the record is devoid of any suggestion that

17  Juror No. 11 was unable to perform his duty.  The trial court was confident that its initial concerns

18  about the juror's attentiveness disappeared once the court informed him that he would be able to

19  attend his class and work.  (4 RT 301.)  The trial court was in the best position to view the juror's

20  demeanor.  There were two conversations between the court and the juror, and in neither of those

21  conversations did the juror ask to be discharged or indicate in anyway that his work and class

22  concerns would affect his ability to be fair and impartial.  (2 RT 107, 3 RT 273-274.)

23          The trial court conducted an appropriate inquiry based on its initial concerns that the juror's

24  obligations outside the trial would cause him to be inattentive or to rush in deliberations.  The court

25  talked to the juror about his schedule, asked him to provide verification, told him to go to his class,

26  and asked him to call the court when he arrived so that the court could speak with a representative

27  from the class about the schedule.  (2 RT 107, 3 RT 273-274.)  Once the court verified the juror's

28  information, it accommodated every concern the juror had.  (4 RT 301.)  Defense counsel's

1  speculation that the juror was "sending out signals," indicating an unwillingness to deliberate,

2  warranted no further inquiry by the court. This speculative concern was the same as the trial court's

3  initial concern, and the trial court had already conducted an appropriate inquiry on that very basis.

4          The state appellate court's conclusion was neither contrary to, nor an unreasonable

5  application of, United States Supreme Court precedent or the facts presented. 28 U.S.C. § 2254(d).

6  Based on the foregoing, the state court reasonably rejected Petitioner's claim.

7                                              **II.**

8  **PETITIONER'S CLAIM THAT THE TRIAL COURT ERRED BY NOT**
   **INSTRUCTING THE JURY TO VIEW HIS EXTRAJUDICIAL**
9  **ADMISSIONS WITH CAUTION MUST BE DISMISSED FOR FAILING**
   **TO PRESENT A FEDERAL QUESTION; THE STATE COURT**
10 **REASONABLY REJECTED THIS CLAIM ON THE MERITS, FINDING**
   **THE ERROR HARMLESS**

11

12         Petitioner contends that the trial court erred by failing to instruct the jury about evaluating

13 his extrajudicial admission with caution, and that the state appellate court's decision incorrectly

14 found the error harmless under state law. (Petition at 7.) This claim fails to present a federal

15 question; moreover, the state court's rejection of this claim is entitled to deference.

16     **A.    Procedural Background**

17         At trial, Saleena Sanchez testified that when she stopped her car at El Prado and

18 Massachusetts, she saw Petitioner waving a gun around. When Rene Lugo asked Petitioner, "Why

19 you got to bring a gun into it," Petitioner responded, "Those fools came at me foul. I handled

20 them." (2 RT 148-149.)

21         Chris Wash told sheriff's detectives that after the shooting, Petitioner told him, "Those

22 fools is gang banging. That's what happens when you gang bang. They shouldn't be gang banging

23 with real gangsters." (3 RT 346; CT 71.) Petitioner said, "gang banging is not a joke." (3 RT 247;

24 CT 71.)

25         During the jury instruction conference, the trial court noted that no one had requested

26 CALJIC No. 2.71 regarding admissions and inquired whether there were any admissions in

27 ///

28 ///

08CV0010 WQH (POR)

10

1   evidence.[10] (4 RT 308-309.) The prosecutor stated, "I wouldn't call any of them admissions, I don't

2   think." Petitioner's counsel noted that he was not asking the trial court to instruct the jury on

3   admissions. The court stated that it was not a sua sponte instruction and did not read the instruction

4   to the jury. (4 RT 309.)

5       **B.   Applicable Law**

6           In federal habeas corpus proceedings, issues relating to jury instructions must themselves

7   infect the entire trial in order to establish a violation of due process. *Estelle*, 502 U.S. at 71-72. It

8   is not enough to show that an instruction was undesirable, erroneous, or condemned; it must violate

9   some due process right protected by the Fourteenth Amendment. *Cupp v. Naughton*, 414 U.S. 141,

10  147, 94 S. Ct. 396, 400, 38 L. Ed. 2d 385 (1991). A challenged jury instruction must be considered

11  in the context of all the instructions and trial record as a whole. *See Estelle*, 502 U.S. at 72. When

12  the issue is the failure to give an instruction, the petitioner's burden to establish a due process

13  violation is particularly heavy because the omission of an instruction is less likely to be prejudicial

14  than an incorrect one. *Henderson v. Kibbe*, 431 U.S. 145, 155, 97 S. Ct. 1730, 52 L. Ed. 2d (1991).

15  ///

16  ///

17  ///

18  ///

19

20     10. CALJIC number 2.71 provides in relevant part:

21          An admission is a statement made by [a] [the] defendant

22  which does not by itself acknowledge [his] [her] guilt of the
    crime[s] for which the defendant is on trial, but which statement

23  tends to prove [his] [her] guilt when considered with the rest of
    the evidence.

24          You are the exclusive judges as to whether the defendant

25  made a confession [or an admission], and if so, whether that
    statement is true in whole or in part.

26

27          [Evidence of [an oral confession] [or] [an oral

28  admission] of the defendant not made in court should be viewed
    with caution.]

**C.    Petitioner's Claim Fails To Present A Federal Question; Petitioner Cannot Demonstrate A Due Process Violation Because The Failure To Instruct Did Not So Infect His Trial As To Render It Unfair; The State Appellate Court Reasonably Rejected This Claim**

Petitioner's claim that the trial court prejudicially erred in failing to caution the jury about evaluating his extrajudicial statements does not present a federal claim. Petitioner has failed to cite to any authority suggesting that an instruction on extrajudicial admissions is required by due process. As such, he can only prevail on this claim by demonstrating his right to due process was violated because the failure to so instruct substantially infected the entire trial such that it was unfair. *Estelle*, 502 U.S. at 71-72.

As noted above, Petitioner's burden is especially high where, as here, the issue is the trial court's failure to instruct on extrajudicial admissions, which is less prejudicial than had the court erroneously instructed on the point. *Henderson,* 431 U.S. at 155. Additionally, as noted by the state appellate court (Lodgment 6 at 15), although the trial court erred in failing to give the cautionary instruction on extrajudicial admissions, the error was harmless in part because the trial court provided the jury with ample guidelines on how to determine the credibility of witnesses. The trial court instructed the jury generally on the believability of witnesses and provided a lengthy list of factors it should consider. (CALJIC No. 2.20; 6 RT 611-612.) The trial court instructed the jury that while the testimony of a single witness was sufficient to prove any fact, it "should carefully review all the evidence upon which the proof of that fact depends." (CALJIC No. 2.27; 6 RT 613-614.) Further, the trial court instructed on prior inconsistent statements (CALJIC No. 2.13; 6 RT 612), discrepancies in testimony (CALJIC No. 2.21.1; 6 RT 612), witnesses that testify falsely (CALJIC No. 2.21.2; 6 RT 612-613), and weighing conflicting testimony (CALJIC No. 2.22; 6 RT 613). Given these instructions, the trial court made the jury thoroughly aware of its duty to scrutinize the credibility of each witness, including those who had attributed admissions to Petitioner.

In light of the other instructions advising the jury how to weigh the credibility of witness testimony, and given the overwhelming evidence of Petitioner's guilt as discussed below, the failure to give CALJIC No. 2.71 in no way infected the entire trial in violation of Petitioner's due process rights. *See Estelle*, 502 U.S. at 72. Petitioner's contention must either be rejected for failing to

1  present a federal question, or alternatively denied based on the state court's reasonable rejection of

2  the claim. 28 U.S.C. § 2254(d).

3  **D.  The Failure To Give CALJIC No. 2.71 Did Not Have A Substantial And Injurious Effect On The Outcome Of Petitioner's Trial**

4

5      Although the trial court erred by failing to admonish the jury to view Petitioner's out-of-

6  court statements with caution, the error was harmless under *Brecht v. Abrahamson*, 507 U.S. 619,

7  623, 113 S. Ct. 1710, 1714, 123 L. Ed. 2d 353, 363 (1993). *See Fry v. Pliler* 127 S. Ct. 2321, 2328,

8  168 L. Ed. 2d 16, 17 (2007) (in all federal habeas proceedings, a court must apply the "substantial

9  and injurious effect" analysis set forth in *Brecht* regardless of whether the state appellate court

10  applied the harmless error standard set forth in *Chapman v. California*, 386 U.S. 18). To be entitled

11  to habeas releif, Petitioner must demonstrate the trial court's error had a "'substantial and injurious

12  effect or influence in determining the jury's verdict.'" *Brecht*, 507 U.S. at 623.

13      The state appellate court determined that the trial court erred, but also determined that the

14  error was harmless under state law as it was not reasonably probable the jury would have returned

15  a more favorable verdict absent the error. (Lodgment 6 at 14.) The court stated, "We do not

16  consider this case to be a particularly 'close' one." (Lodgment 6 at 17.) There was overwhelming

17  evidence of Petitioner's guilt independent of his admissions. The jury considered Wash's eyewitness

18  testimony. Wash was within feet of Petitioner when he shot Martinez. (2 RT 236; 1 CT 63.) The

19  jury considered Sanchez's testimony that she saw Petitioner with a gun in his hand immediately after

20  the shooting. (2 RT 142.) The jury considered Petitioner's own testimony about his problems with

21  "DTK" and his feeling about them being in his territory. (4 RT 375-377, 384.) The jury heard

22  Petitioner say that he fired three shots in Martinez's direction. (4 RT 413; 5 RT 519.) Although

23  Petitioner claimed it was self-defense, Wash testified that he anticipated a fist fight and was

24  surprised when Petitioner pulled out a gun because no one had brandished a weapon of any sort. (3

25  RT 220, 226, 229, 236-237, 243; 4 RT 399.) In light of the compelling evidence against him, as well

26  as the trial court's other instructions on evaluating witness credibility, Petitioner cannot demonstrate

27  that the trial court's failure to instruct pursuant to CALJIC No. 2.71 had a "substantial and injurious

28  effect" on the jury's verdict. *See Brecht*, 507 U.S. at 623.

**III.**

**PETITIONER'S CLAIM THAT THE TRIAL COURT ERRED BY PROVIDING THE JURY WITH AN INSTRUCTION ON WEIGHING WITNESS CREDIBILITY THAT LOWERED THE PROSECUTION'S BURDEN OF PROOF MUST BE DISMISSED FOR FAILING TO PRESENT A FEDERAL QUESTION; THE STATE COURT REASONABLY REJECTED THIS CLAIM ON THE MERITS**

Petitioner contends that by authorizing the jury to evaluate witness credibility on a probability standard, CALJIC No. 2.21.2[11] violated his due process right to proof of his guilt beyond a reasonable doubt. (Petition at 8.) Petitioner's claim fails to present a federal question. Moreover, because he can establish neither that the instruction so infected the entire trial as to constitute a due process violation, nor that the instruction had a substantial or injurious effect on the outcome of his trial, Petitioner is not entitled to habeas relief. Finally, the state appellate court reasonably rejected this claim pursuant to 28 U.S.C. § 2254(d).

**A.    Applicable Law**

As with the previous claim, instructional concerns are matters of state law and are not cognizable in a federal habeas proceeding unless Petitioner can show his due process rights were violated. *Estelle*, 502 U.S. at 67. Due process requires the prosecution to prove all elements of an offense beyond a reasonable doubt. *Sullivan v. Louisiana*, 508 U.S. 275, 277-278, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993). To establish a due process violation, Petitioner must show that the jury instruction, considered in the context of the overall charge to the jury and the trial record as a whole, infected the entire trial. *Estelle*, 502 U.S. at 71-72. Additionally, Petitioner must establish that "'there is a reasonable probability that the jury has applied the instruction in a way' that violates the constitution." *Id.* at 72 (*quoting Boyd v. California*, 494 U.S. 370, 380, 110 S. Ct. 1190, 108 L. Ed. 2d 316 (1990)).

///

---

11.    CALJIC No. 2.21.2 provides:
    A witness, who is willfully false in one material part of his or her testimony, is to be distrusted in others. You may reject the whole testimony of a witness who willfully has testified falsely as to a material point, unless, from all the evidence, you believe the probability of truth favors his or her testimony in other particulars.

**B.    Petitioner's Claim Fails To Present A Federal Question; Petitioner Cannot Demonstrate A Due Process Violation Because The Instruction Did Not So Infect His Trial As To Render It Unfair; The State Appellate Court Reasonably Rejected This Claim**

Petitioner's claim, that by giving CALJIC No. 2.21.2 the trial court lessened the prosecutor's burden to prove his guilt beyond a reasonable doubt, is a concern of state law and does not present a federal claim. Petitioner fails to cite to any authority suggesting that the instruction runs afoul of due process principles. Therefore, to establish a due process violation, he must show that the instruction so infected the entire trial that the result was an unfair trial. *See Estelle*, 502 U.S. at 71-72.

The state appellate court reasonably rejected Petitioner's claim, noting:

However, as [Petitioner] concedes, the California Supreme Court has consistently rejected constitutionality challenges to CALJIC No. 2.21.2. (See, e.g., *People v. Cleveland* (2004) 32 Cal.4th 704, 751 ["The instruction on willfully false witnesses (CALJIC No. 2.21.2) does not reduce the prosecution's burden of proof"]; *People v. Riel* (2000) 22 Cal.4th 1153, 1200; *People v. Beardslee* (1991) 53 Cal.3d 68, 94-95, 806 P.2d 1311, 279 Cal. Rptr. 276.) Because we are bound by those precedents, we conclude the trial court properly instructed with CALJIC No. 2.21.2.

(Lodgment 6 at 17-18.) The court went on to note:

In any event, because the trial court also instructed on the prosecution's burden to prove Hernandez's guilt beyond a reasonable doubt (CALJIC No. 2.90) and consideration of the instructions as a whole (CALJIC No. 1.01), the court's instructions as a whole informed the jury on the proper burden of proof. (See, e.g., *Riel,* 22 Cal. 4th at 1200.)

(Lodgment 6 at 18, fn. 12.)

In light of the overall charge to the jury and the record as a whole, it cannot be said that CALJIC No. 2.21.2 "by itself so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72 (*quoting Cupp*, 414 U.S. at 147). As explained by the California Supreme Court, the instruction did not lower the prosecution's burden of proof as it merely states "the obvious -- that the jury should refrain from rejecting the whole of a witness's testimony if it

believes that the probability of truth favors any part of it." *People v. Beardslee,* 53 Cal. 3d at 68.

Additionally, the instruction applied to all witnesses, not only Petitioner.  Moreover, the trial court

instructed the jury on the prosecution's burden to prove the offense beyond a reasonable doubt

(CALJIC No. 2.90; 6 RT 615-616), and told the jury to consider the instructions as a whole (CALJIC

No. 1.01; 6 RT 607).  When viewed in the context of the instructions as a whole, there was no

reasonable likelihood that the jury misconstrued or misapplied the words of CALJIC No. 2.21.2 in

a manner that violated the Constitution.

### C. The Giving Of CALJIC No. 2.21.2 Did Not Have A Substantial And Injurious Effect On The Outcome Of Petitioner's Trial

Even if Petitioner could establish that CALJIC 2.21.2 violated his due process

rights, he cannot demonstrate that the instruction had a substantial influence on his

conviction and resulted in actual prejudice. *Brecht,* 507 U.S. at 637.  For the same reasons

asserted in the previous argument — the other instructions on how to weigh witness

credibility, the burden of proof, and reasonable doubt, as well as the overwhelming evidence

of Petitioner's guilt — Petitioner cannot establish actual prejudice under *Brecht* and is not

entitled to relief.

Accordingly, Petitioner's contention must either be rejected for failing to present

a federal question, or alternatively denied based on the state appellate court's reasonable

rejection of the claim. 28 U.S.C. § 2254(d).

///

///

///

08CV0010 WQH (POR)

**CONCLUSION**

For the reasons stated above, Petitioner's Petition must be dismissed with prejudice and no certificate of appealability should issue from the denial.

Dated: June 4, 2008

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DANE R. GILLETTE
Chief Assistant Attorney General

GARY W. SCHONS
Senior Assistant Attorney General

NIKI SHAFFER
Deputy Attorney General


/S/ ROBIN DERMAN
ROBIN DERMAN
Deputy Attorney General

Attorneys for Respondent

70125704.wpd
SD2008800531

08CV0010 WQH (POR)

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   *Hernandez v. Hedgpeth*

No.:   **08CV0010 WQH (POR)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On June 4, 2008, I served the attached *MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER TO FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS* by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 110 West A Street, Suite 1100, P.O. Box 85266, San Diego, CA 92186-5266, addressed as follows:

Ismael S. Hernandez
V-92592
North Kern State Prison
P.O. Box 5104
Delano, CA 93216

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on June 4, 2008, at San Diego, California.

| | |
|---|---|
| Terri Garza | *Terri Garza* |
| Declarant | Signature |

70125788.wpd